**STATE, ex rel. HANRAHAN et, Relators, v. ZUPNIK et, Respondents.**
**STATE, ex rel. BARRETT et, Relators, v. ZUPNIK et, Respondents.**
**STATE, ex rel. HORN et, Relators, v. BATH et, Respondents.**
**STATE, ex rel. ANKLAM et, Relators, v. BATH et, Respondents.**

Common Pleas Court, Cuyahoga County.

Nos. 602097, 602098, 602099, 602100. Decided June 19, 1952.

464

Green, Lausche & Wilmot, A. F. Gallagher, Cleveland, for relators.

Joseph H. Crowley, Director of Law, James M. McSweeney, Asst. Director of Law, Cleveland, for respondents.

## OPINION

By HOOVER, J.

These are four mandamus cases. Each is a group action to enforce pensions. Two cases involve police pensions. Two

cases involve firemen's pensions. In each case, the respondents are the particular pensions fund's trustees, its custodian and the City of Cleveland. The facts are all agreed. Only questions of law are presented. Firemen's pensions are governed by §4600 GC, et seq. Police pensions are governed by §4616 GC, et seq.

One of the police cases and one of the firemen's cases involves pensioners who were qualified and placed on the respective pension payrolls **prior to May 26, 1937.** The other police case and the other firemen's case involves pensioners who were qualified and placed on the respective pension payrolls **after May 26, 1937.**

**May 26, 1937** is an important date because it was the effective date of the so-called "**vested rights" statutes** (§4612-1 GC as to firemen pensions and §4628-1 GC as to police pensions). The rights of those who became pensioners before that date and the rights of those who became pensioners after that date are governed by slightly different principles. Two classes of pensioners were created by those statutes. **State, ex rel. Cunst v. Trustee et al, 150 Oh St 377, 379.** These two groups will be referred to as the "**before vested right statute group**" and the "**after vested right statute group.**"

Due to lack of funds, there were certain months in between the years 1940 to 1946 when no payments or only partial payments were made to police pensioners; and certain months in between the years 1945 to 1946 when no payments or only partial payments were made to firemen pensioners. However, during those years the pension trustees of each fund did distribute to pensioners all the money that was in the fund. At the time these actions were brought in 1949, due to replenishment there were on hand in the respective pension funds sufficient money to pay these so-called past delinquencies as well as all other presently due obligations.

Defendants say that during each so-called delinquent year every step required by law to be taken to raise money to pay pensions was taken; that all money raised was wholly distributed during each such year; and that whenever the trustees in any one year have distributed all the money on hand during that year, their obligation to the pensioner for that year is forever discharged even though the distribution was not sufficient to pay him the full amount of his pension for that year. The relators deny any such automatic chopping-off of their rights at the end of each calendar year. Relators say that these pensioners have a vested right to a definite amount, that the inability of the fund in any one year fully to pay that amount does not destroy the obligation and that

the delinquencies must be paid at any later time when sufficient money is available to pay them.

To the defendants, a pension is a matter of each calendar year being a separate little compartment of business unto itself. To the relators, each year cannot hide behind its own little sort of corporate entity; it is a matter of one, continuing single business being responsible for its obligations whether they were incurred this year or last year or the year before.

We first discuss the "after vested right statute group." Secs. 4612-1 and 4628-1 GC, applying respectively to firemen's pensions and police pensions and known as the "vested right" statutes, provided in the forms thereof that became effective on May 26, 1937:

"The granting of a pension to any person hereafter pursuant to the rules adopted by the trustees shall operate to **vest a right** in such person, so long as he shall remain the beneficiary of such pension fund, to receive such pension at the **rate** so **fixed** at the time of granting such pension."

There is no denying it because the statutory words are specific—the effect of the statute is to **"vest a right"**—The standard definition of "vest" is "To give an **immediate fixed right** of present or future enjoyment." Accordingly he who became a pensioner on or after May 26, 1937 (unless there was some statutory modification before he became a pensioner) got an immediate fixed right. It was a right to **receive** a pension. It was a right to receive it at a **fixed rate.** It was a right to receive it at the rate fixed at the **time the pension was granted.**

The only conditions to vesting imposed by the statute are (1) that a pension be granted and (2) that this granting be pursuant to rules adopted by the trustees. These conditions were met as to this "after vested right statute group." The vested right continues so long as the grantee remains a beneficiary of the fund. This requirement too was met by this group.

Note that the statute does not impose any other condition. The vested right to receive a pension payment due in any year at a fixed rate is not made dependent upon the size or condition of the fund in any year, nor upon the amount of collections in any year, nor upon payment from collections made in any year, nor upon there being enough in the fund in any year to meet all the pension payments coming due that year, nor upon payment out of money derived from any particular source. The statute does not say that this vested right to receive fixed pension payments due in any year is discharged if there is no money in the fund or if the money is all paid out in any year.

We have no right to clutter this clear statute with conditions. If we started reading into this statute any one of these conditions that are not there we could just as well read into it all the others that are not there, and a right that the statute intended to guarantee would vanish instead of vest.

The purpose of pension statutes is the humane one of caring for people. The purpose of the "vested right" statutes is to make that care effective by providing these people with something definite on which they can count. Their purpose is to do away with the gnawing, destructive, nerve-wracking peril of uncertainty. Respondents would have us restore the uncertainties that the "vested right" statutes remove. These statutes remove this awful business of constantly being kicked around by harrowing uncertainty. They do it by imposing a fixed obligation. The fixed right of a pensioner to receive a fixed pension is not destroyed by the fund being temporarily out of money, any more than is a creditor's right to payment impaired because his debtor is temporarily embarrassed.

A pension fund is only one fund. It is not a series of separate funds made up of money received in separate calendar years or a series of separate funds made up of money derived from separate sources or a series of separate funds with separate beneficiaries. All money goes into one till un-earmarked except to pay fund obligations. To quarter or carve up the fund would be to quarter or carve up some needy persons' human rights.

There is no doubt that the present size of the pension funds and the present availability of money to pay past delinquencies are in great measure due to contributions made by the state pursuant to the state subsidy statute, §4631-4 GC, which became effective on September 25, 1947. Respondents contend that money derived from this source cannot be used to pay such delinquencies. We fail to find that the legislature has clamped any such shackles on its use. Essentially the statute merely says that the subsidy money shall be paid to the pension fund. The statute does not specify for what the subsidy money shall be used or for what it shall not be used. We take it therefore that the legislature intended that it should be used for any legitimate purpose of the fund. What more legitimate fund purpose is there than paying fund obligations whether they became obligations five minutes or five years ago or whether they become obligations fifty minutes hence.

A legislature which had been solicitious enough of pensioners to protect them with vested rights to fixed payments

could not have been blind to the fact that payments were delinquent and that the pension funds had unpaid obligations. In providing state subsidy, we believe the legislature was just as concerned in seeing that these vested obligations were paid as it was in making provision for them to be vested in the first place. Care is the guiding concept. We think the legislature was just as intent in providing money to pay what was vested and due the pensioned veteran, his widow and orphan of the years 1945 and 1946 as it was those of 1948 and 1949. If the legislature had intended to shut out the former from state benefits it would have said so.

Defendants' theory of the purpose of the "vested right" statutes is that they were meant but to take away from the pension trustees the power to impair the right to a pension which was granted after the statutes' effective date (**State ex rel. Lemperle v. McIntosh, et al., 145 Oh St 107, 111**) and that the trustees have done nothing to impair relators' rights here. Doubtless that is one of the purposes, but it is only one and not the only one. The existence of that purpose does not rule out other purposes. In fact the Supreme Court has revealed another purpose in holding that rights which have vested under such statutes cannot later be impaired even by the legislature. **State ex rel Cunat v. Trustees, 149 Oh St 477, 483.** The Supreme Court came to this conclusion even though such statutes do not even mention the legislature. On their face and in the plainest terms these statutes make too clear to be denied—whatever else may be their purpose—the conspicuous, unmistakable purpose to give a vested right at a fixed rate. Other purposes do not destroy this specifically-worded, featured, dominating purpose. In quest of hidden meanings, we must not lose sight of the obvious meaning. In the case last cited it is said (p. 481-82):

"' * *the effect of these statutes (vested right statutes) is to make the engagement of public authorities to pay a pension, upon conditions fulfilled, a contractual obligation founded upon a valid consideration, giving to the pensioner a vested right in his pension which cannot afterwards be impaired or revoked."

The **"after vested right statute group"** fulfilled the conditions and their rights vested. The "vested right" statutes give them a **fixed** pension instead of an "**iffy**" pension.

Next we discuss the **"before vested right statute group."** Pensions granted before the effective date of these statutes in 1937 were held to be gratuities and not vested rights. **State ex rel Carrell v. McCarthy, 139 Oh St 654, 655.** Though that is the general rule long recognized by most authorities, it has an exception long recognized by most authorities, namely, that **"where a particular installment of a pension has ac-**

crued there is a vested right in the pensioner to that installment." 137 A. L. R. 249, 255; 112 A. L. R. 1009, 1010; 98 A. L. R. 505, 507; 54 A. L. R. 943, 945; 40 Am. Jur. (Pensions) 981: 21 R. C. L. (Pensions) 242-243, Sec. 7; 3 McQuillin on Municipal Corporations (3rd ed., 1949) 516, Sec. 12.145; 50 L. R. A. N. S. 1018, 1021; **Thompson v. Marion, 27 Abs 341, 348, syl. 4, affirmed 134 Oh St 122.** The "before vested right statute group" seeks payment only of installments that had accrued to them under trustees' rules that existed at the time of accrual. Under the authorities the right to such installments is vested. Being vested it becomes a fund obligation payable out of the fund just the same as rights that vest under the statutes

Question is raised as to whether mandamus is the proper remedy to enforce these pensions. Defendants remind us that relators must establish a clear right, also establish that there is no plain and adequate remedy in the ordinary course of the law. **State ex rel Stanley v. Cook, 146 Oh St 348.** We think these requisites are met. Relators have a clear right to payment of money out of a fund in which there is sufficient money to make such payments. The trustees and the custodian are under a clear duty to set the machinery into operation to make such payments. Effective in 1939 (long before the present suits were brought) is this clause in the present form of §4612-1 GC, relating to firemen's pensions:

"The right to obtain and receive the relief or pension herein granted may be enforced by an action in mandamus instituted in the court of common pleas * * *"

Admittedly this statute applies only to firemen's pensions and not police pensions, but it really created no new right. The legislature merely did what a legislature frequently does—that is—legislatively affirms an existing right. It is hardly thinkable that the legislature intended to play favorites giving the firemen a remedy and denying it to the police. There are too many high court cases in Ohio and throughout the United States wherein pension rights were enforced by mandamus for a trial court to assume to overrule its superiors on this point.

Finally, we consider the six year statute of limitations (§11222 GC) set up by defendants to certain of the causes of action. **State ex rel Delaney v. Holmes, 5 Oh Ap 1, affirmed 93 Oh St 480.** According to this authority, a pensioner's right to mandamus accrues every month as to that month's installment, and remedy is barred as to every installment that is six years overdue. That is the general rule, but here again there is an exception, namely, where no money is available to make payment an action in mandamus does not accrue and does not lie to compel payment, and the statute of limitations does

not begin to run until money is available for payment. The court will not compel a vain, idle act. One of the points most strongly urged by defendants is that "in each year both pension Boards of Trustees made distribution of all the pension money on hand, and available to pay pensions." The statute of limitations does not begin to run until funds are available to pay, and here there is no showing that funds were available six years prior to the commencement of these actions so as to start the statute of limitations running.

Accordingly, decrees may be drawn for relators.